RAMIRO W. MORALES, Plaintiff and Appellant, *v.* MODESTO PEÑA ET AL., Defendants and Appellees.

No. 4456. Argued April 24, 1929.—Decided November 18, 1929.

*A. Porrata Doria,* for appellant. *José J. Aponte,* for appellees.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Ramiro W. Morales sold to Modesto Peña, married to Elena de Jesús, two rural properties in the ward of Quebrada Arriba in the Municipal District of Patilla. The contract was embodied in a public instrument executed before notary

Adolfo Porrata Doria on September 25, 1925. The purchase price was $1,650 of which the purchaser paid down $550, and it was agreed that the balance should be paid as follows: $550 on September 25, 1926, and the remainder at the expiration of the second year, it being stipulated that the deferred payments should draw interest at the rate of 12 per cent annually, with $100 for costs and attorney's fees in case of legal proceedings.

The purchaser was unable to record the properties in his name because they were not recorded in the name of the vendor. He thereupon instituted a proceeding to establish ownership, but The People of Porto Rico set up an opposition on the ground that the properties in question belonged to The People. When the first deferred payment of $550 became due, Ramiro W. Morales tried to collect it extrajudicially and the purchaser requested an extension during the pendency of the ownership proceedings which he was prosecuting. Morales granted him an extension, either for the whole month of October, 1926, or until the termination of the proceedings. It may be stated as a fact that the vendor waited until January 26, 1927, to bring in the District Court of Guayama his action against Peña and his wife for the recovery of the $550 with interest thereon. Defendants pleaded that they had instituted ownership proceedings and that The People of Porto Rico had set up an opposition as being the owner of the properties in question, which facts were known to Morales, and that Morales had conveyed the properties to defendants knowing that he had no title. For that reason defendants had withheld payment.

After a trial the court rendered judgment against the plaintiff, who has appealed therefrom and assigned the following errors:

"1.—The lower court erred in rendering a judgment contrary to the facts.

"2.—The court erred in rendering a judgment which is contrary to law.

"3.—The court erred in denying the motion to strike out several answers given by witness Vicente Capó.

"4.—The court erred in imposing the costs against the plaintiff without justification in view of the merits of the case."

It is opportune to state here that the form of assignments 1 and 2 does not seem to us to be very commendable by reason of their vagueness. Such assignments should be more specific.

As regards the facts, the presumption is that the evidence has been properly weighed by the lower court, unless it is shown that there was passion, prejudice, bias, or grave and manifest error. This doctrine has been constantly followed by this court. We have examined the stenographic record and find that the district judge drew the right conclusion from the evidence.

It seems to us, however, that the existence of an extension has been given more importance than it deserves. The vendor *has had* the right to demand payment. If he has failed to demand it, the purchaser is entitled to file such a demurrer as was filed by him in the present case. Section 1405 of the Civil Code of Porto Rico reads as follows:

"Should the vendee be disturbed in the possession or ownership of the thing acquired, or should have reasonable grounds to fear being disturbed by an action for recovery or mortgage suit, he may suspend the payment of the price until the vendor has caused the disturbance or danger to cease, unless he gives security for the restitution of the price, in a proper case; or should it have been stipulated that, notwithstanding any such contingency, the vendee shall be bound to make the payment."

The situation in which the purchaser is placed by the occurrence of either of the above circumstances is similar to the failure to deliver the thing bought, and perhaps to an irregular or imperfect delivery.

In the contract of sale, which is the prototype of bilateral contracts, the rights and obligations exist upon and arise from a perfect mutuality and reciprocity. The vendor assumes the obligation arising from the consent for the

contract itself and which by a juridical and economic phenomenon goes beyond the consummation of the contract, as is shown by the vendor's liability in case of eviction. Not only is he bound to deliver the thing, but to deliver it with a clear title and free from defects arising prior to its delivery. Correlative to this obligation is the right to receive the purchase price whose delivery is, in turn, the obligation of the purchaser, who is entitled to the thing sold. Rights and obligations are so interwoven and so qualify each other in these bilateral contracts that the contract structure will lose its stability, its harmony and its effectiveness, if any of its dependent elements suffers or is violated. An abnormal situation then arises whose generic solutions are provided for in section 1091, and whose specific solutions are to be found in some contracts and especially in the contract of sale. One such situation is that contemplated by section 1405 of the Civil Code above quoted. If the purchaser is disturbed in his possession or ownership of the thing bought by him or has reasonable grounds to fear being disturbed by revindicatory action or by mortgage foreclosure proceedings, it can not be contended by any means that the thing had been delivered to him free from dangers and with a clear title, at least as long as the danger exists. Nor can a strict performance of his obligation to pay the purchase price be exacted from him, as such obligation on his part is closely and mutually dependent upon that of the vendor to deliver the thing sold. That is why the code creates the remedy or furnishes the solution to such abnormal situation by authorizing the purchaser to suspend payment until the vendor has caused the disturbance or danger to cease, or gives proper security.

In the present case it is evident that the ownership or possession of the purchaser was seriously threatened. When he tried to clear his title by judicial proceedings, another party appeared claiming to be the owner of the properties and alleging formal ownership thereof. Could it be contended

that the fears of the purchaser were groundless? Certainly not. What did the vendor do? Did he remove the danger or cause it to be removed? Did he take any action to defend the title? We find no showing of this in the case herein. The vendor perhaps promised the purchaser that he would give security; but he did not come out openly and unreservedly with an offer thereof or make the purchaser accept or refuse such security so as to consolidate his contract.

As regards section 1405 of the Civil Code it has been said by Mr. Justice Wolf in his concurring opinion in *Costas* v. *Noriega,* 33 P.R.R. 94, 96, that—

"My idea of section 1405 of the Civil Code is that it must be limited to cases where a purchaser who apparently buys a certain thing finds himself threatened with a privation, reduction or diminution of the thing that is bought."

That is the meaning of the statutory provision cited. The threat of deprivation or diminution of the possession or ownership over the thing bought casts a shadow upon the effectiveness of the acquisition. Such a cloud can either be dispelled harmlessly or may cause grave disturbance. Hence the special protection afforded by law to the purchaser who is endangered or disturbed in the enjoyment of the thing bought by him and who has not, as far as he is concerned, perfected the contract, since he has not fully paid the purchase price.

We have been cited by appellant to a decision of the Supreme Court of Spain which is also cited by the commentator Manresa and which was rendered on December 20, 1928. But we do not think that it favors the contention of the appellant; the circumstances mentioned in that decision are present in the case at bar; the fear is well founded and it is probably a reasonable conclusion, although not a certainty, that The People will prosecute an action of revendication.

The court reached the right conclusion as to both the facts and the law. The first and second errors assigned do not exist.

As regards the third assignment we fail to see the error urged. The witness Capó testified as a person who intervened in a controversy which had not yet become judicial and referred to the parties interested therein. Plaintiff then, after he had moved to strike out the testimony of the witness, cross-examined him and thereby defeated his objection.

As to the imposition of costs the trial judge doubtless concluded that the plaintiff had acted with obstinacy in bringing his action. We think that the judgment is erroneous in this particular. The opposing theories of the withholding of the purchase price and of the absolute obligation to pay it are debatable, and the act of contending for either theory can not be said to constitute obstinacy. The costs should not have been imposed as provided in the judgment.

As the question whether or not there was an extension has been argued at length in this case, it would seem advisable to recall here section 1407 of the Civil Code, as follows:

"In the sale of real property, even though it may have been stipulated that in the absence of the payment of the price within the time agreed upon, the rescission of the contract shall take place by full right, the vendee may pay, even after the expiration of the period, as long as he has not been summoned either judicially or by a notarial act. After the suit has been instituted the judge can not grant him a further period."(*)

We do not hold that the quoted section applies strictly to the case at bar. But a reading thereof is sufficient to dismiss all concern as to the great importance sought to be attached to the extension.

The judgment appealed from must be reversed as to the pronouncement of costs, modified in the sense that each party

---

(*) NOTE.—It is believed that a more adequate translation of section 1407 above quoted would be as follows:

"In the sale of real property, even though it may have been stipulated that in default of the payment of the price within the time agreed upon, the dissolution of the contract shall take place *ipso facto,* the vendee may pay even after the expiration of the period, at any time before demand for payment has been made either by suit or by notarial act. After such demand has been made the judge cannot grant him further time."

See "The Civil Code of Spain" translated by F. C. Fisher, p. 316 (Art. 1504).

shall pay his own costs, and affirmed as to all other particulars.

Chief Justice del Toro took no part in the decision of this case.